IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DESIREE PURVENAS-HAYES**, <br><br> *Plaintiff,* <br><br> v. <br><br> **SALTZ, MONGELUZZI & BEDENSKY, P.C.**, <br><br> *Defendant.* | **Case No. 2:23-cv-02403-JDW** |

### MEMORANDUM

Judges presume that Congress chooses its words carefully. So, when Congress uses one set of words in one paragraph of a statute but different words in a different part of the same statutory paragraph, I assume that Congress intended there to be a difference. The ADA is one example of this principle. In one subparagraph of the ADA, Congress forbids employers from making "inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability." 42 U.S.C. § 12112(d)(4)(A). In the very next subparagraph, Congress permits employers to "make inquiries into the ability of an employee to perform job-related functions." *Id.* § 12112(d)(4)(B). By choosing to put different limits on the word "inquiry" in the two subparagraphs, Congress indicated its intent that the covered inquiries are different in each subparagraph. And that difference is key in this case because it permits Desiree

Purvenas-Hayes to pursue her claim of confidential medical information disclosure against her former employer Saltz Mongeluzzi & Bedensky, P.C. ("SMB").

I. **BACKGROUND**

Ms. Purvenas-Hayes worked at SMB as a litigation paralegal until July 2021. During her employment, SMB required her to provide certain medical information, including her COVID-19 vaccination status, and she did so. In June 2022, Ms. Purvenas-Hayes sued SMB, alleging that she wasn't paid for overtime work. A few days later, the *Legal Intelligencer* reported that Robert Mongeluzzi told the paper that Ms. Purvenas-Hayes left the firm "because she did not wish to receive the [COVID-19] shot." (ECF No. 14-3.[1]) Ms. Purvenas-Hayes alleges that she suffered "significant embarrassment, emotional distress, and pain and suffering" as a result of the disclosure. (ECF No. 1 ¶ 28.)

On June 22, 2023, Ms. Purvenas-Hayes sued SMB a second time, this time for violating the confidentiality requirements of the ADA. On October 25, 2023, SMB moved to dismiss, arguing that the ADA's confidentiality provision does not apply and that Ms. Purvenas-Hayes has not pled an injury with enough specificity. The Motion is now ripe for disposition.

---

[1] SMB attached the referenced *Legal Intelligencer* article to its Motion to Dismiss. (*See* ECF No. 14-3). Because "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," I will consider that exhibit. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## II.  LEGAL STANDARD

A district court may dismiss a complaint for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quotation omitted). A court should accept well-pled factual allegations as true and "determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotation omitted). The court must "construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 790 (citation omitted).

## III.  DISCUSSION

The ADA provides that a covered employer "shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such … inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). However, a covered employer "may make inquiries into the ability of an employee to perform job-related functions." *Id.* § 12112(d)(4)(B). When an employer receives information pursuant to Section 12112(d)(4)(B), it must treat the information as a confidential medical record and can only disclose it to supervisors who need to know about job-related restrictions, first aid and safety personnel, and government investigators evaluating ADA compliance. *See id.* §§ 12112(d)(3)(B), (d)(4)(C). As these provisions make clear, a plaintiff asserting a

violation of the ADA's confidentiality provision must show that (A) "[her employer] obtained [her] medical information through an employment-related medical examination or inquiry," (B) "[her employer] disclosed that information," and (C) "that [she] suffered an injury as a result of the disclosure." *Bardell v. Banyan Delaware, LLC*, No. CV 23-148-WCB, 2023 WL 6810092, at *5 (D. Del. Oct. 16, 2023).

### A.   An Acceptable "Inquiry" Under the ADA

In interpreting a statute, a court's job is to "interpret the words consistent with their ordinary meaning … at the time Congress enacted the statute." *United States v. Jabateh*, 974 F.3d 281, 292 (3d Cir. 2020) (quoting *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018)). Where the words of a statute are unambiguous, the inquiry ends. But a statute is ambiguous if it includes disputed language that is "reasonably susceptible to different interpretations." *United States v. Jackson*, 964 F.3d 197, 201 (3d Cir. 2020). In that case, a court may turn to canons of statutory interpretation including reviewing legislative history. *See id.* The "plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Monzon v. De La Roca*, 900 F.3d 92, 102 (3d Cir. 2018).

The ADA doesn't define the term "inquiry," so I give the term its ordinary meaning. In 1990, when Congress passed the ADA, "inquire" meant "to seek information; ask a question or questions." WEBSTER'S NEW WORLD DICTIONARY OF AMERICAN ENGLISH 697 (3d ed.

4

1988) (defining "inquiry" as "the act of inquiring"). So, when Section 12112(d)(4)(A) bars an employer from "mak[ing] inquiries of an employee as to whether such employee is an individual with a disability," it is prohibiting the employer from asking questions as to whether the employee is an individual with a disability. And when Section 12112(d)(4)(B) permits an employer to make "inquiries into the ability of an employee to perform job-related functions," it is permitting the employer to ask questions about the employee's ability to perform those functions.

One could read the word "inquiries" to mean any request (subject to the other limiting language in the statute). Or, given the ADA's context and structure, one could reasonably read it only to mean "medical inquiries." At least one court has read it that way. See *E.E.O.C. v. Thrivent Fin. for Lutherans*, 700 F.3d 1044, 1050 (7th Cir. 2012) (concluding that the term "inquiries" under the ADA means "medical inquiries"). But either way, Ms. Purvenas-Hayes has alleged that SMB made an inquiry of her when it "required [her] to provide it with certain confidential medical information, including her COVID-19 vaccination status, in response to a medical inquiry ...." (ECF No. 1 ¶ 22.)

SMB's argument fails because it takes too narrow a view of the word "inquiry." According to SMB, an "inquiry" in Section 12112(d)(4)(B) is "one into 'whether such employee is an individual with a disability or as to the nature or severity of the disability.'" (ECF No. 14-1 at 10 (quoting § 12112(d)(4)(A)).) But SMB's argument ignores the language of subparagraph (A). In that paragraph, Congress explained the type of inquiries that an

5

employer could not make—those "as to whether such employee is an individual with a disability or as to the nature or severity of the disability." 42 U.S.C. § 12112(d)(4)(A). Congress's inclusion of that limiting language indicates that Congress understood that the word "inquiries," standing alone, was not limited to inquiries about disabilities; that's why Congress had to add language to limit the scope of the covered inquiries. But Congress did not include the same limiting language in subparagraph (B). Instead, it permitted inquiries into "the ability of an employee to perform job-related functions." *Id.* § 12112(d)(4)(B). Unlike in subparagraph (A), Congress did not limit the inquiries in subparagraph (B) to those made "of an employee," nor did it limit it to examinations about the existence of severity of a disability. *Compare id.* § 12112(d)(4)(A) *with* § 12112(d)(4)(B). The "use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words." *United States ex rel. Petratos v. Genetech Inc.*, 855 F.3d 481, 488 (3d Cir. 2017). Congress's use of different language in subparagraphs (A) and (B) to limit the scope of the relevant inquiries indicates that it intended the limits to be different.

SMB's argument that the scope of the inquiries in the two subparagraphs is the same ignores this canon of statutory construction. If SMB were correct, and Congress intended subparagraph (B)'s use of the word "inquiry" to harken back to subparagraph (A), then Congress could have said so by referring to "such inquiry" or "an inquiry under subparagraph (A)" or an "inquiry under this paragraph." Or Congress could just have

defined the word "inquiry" at the start of paragraph (4). It did none of those things. Instead, it chose to use different words to limit "inquiries" in subparagraphs (A) and (B). SMB's argument would have me ignore that choice. The cases that SMB cites do not support its argument for the same reason. They focus on what subparagraph (A) prohibits, not on what subparagraph (B) permits. *See, e.g., Chancey v. BASF Corp.*, No. 22-00034, 2022 WL 1848375, at * 4 (S.D. Tex. Dec. 29, 2022); *Jorgenson v. Conduent Trasp. Sols., Inc.*, No. 22-cv-01647, 2023 WL 1472022, at * 5 (D. Md. Feb. 2, 2023); *Friend v. AstraZeneca Pharms. LP*, No. 22-cv-3308, 2023 WL 3390820, at * 5 (D. Md. May 11, 2023).

At least two other Courts of Appeals and the EEOC read the statute in the same way. The Second Circuit explains that "[t]he ADA does not forbid all medical inquiries, but only those 'as to whether such employee is an individual with a disability or as to the nature or severity of the disability.'" *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 95 (2d Cir. 2003) (quoting § 12112(d)(4)(A)). The Eleventh Circuit states that "[t]he regulations clarify that while it is appropriate for an employer to inquire into an applicant's ability to perform job-related functions, it is illegal for him to make targeted disability-related inquiries." *Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1215 (11th Cir. 2010) (interpreting identical language in § 12112(d)(2)). EEOC guidance is in alignment: "Questions that are not likely to elicit information about a disability are always permitted, and they include asking employees … whether they can perform job functions." *Questions and Answers: Enforcement Guidance On Disability-related Inquiries and*

*Medical Examinations of Employees Under the Americans With Disabilities Act (ADA)*, (EEOC, July 26, 2000), 2000 WL 33407183, at *2.

### B.     The ADA's Confidentiality Requirement

When an employer's inquiry of an employee yields information "regarding the medical condition or history of any employee," the employer must treat the information as a confidential medical record. 42 U.S.C. §§ 12112(d)(3)(B), (d)(4)(C); *see also Sheriff v. State Farm Ins. Co.*, No. 3:12-CV-243, 2013 WL 4084081, at *4 (W.D. Pa. Aug. 13, 2013). When SMB asked Ms. Purvenas-Hayes for her COVID-19 vaccination status, it requested information about her medical history, and she provided it. SMB therefore had an obligation to keep the information confidential.

SMB's arguments to the contrary can't overcome this simple fact. Much of SMB's argument about confidentiality obligations rests on the faulty premise that only disability-related inquiries could yield information to which the confidentiality obligations apply. But, as I've already discussed, subparagraph (B) permits inquiries beyond those that are disability-related, and subparagraph (C)'s confidentiality obligation covers medical information obtained from any of those inquiries. SMB also makes arguments about legislative intent and notes that SMB's disclosure did not cause a disability-related stigma. But that's beside the point because the confidentiality obligation goes beyond disclosures of disability-related information. Speculation about Congressional intent—even well-

founded speculation—cannot vary the meaning of the statute. *See In re Ferandos*, 402 F.3d 147, 155 (3d Cir. 2005).

SMB also argues that it did not disclose Ms. Purvenas-Hayes's health information, only information about her political views. At this stage of the proceedings, I disagree. I must draw all reasonable inferences in favor of Ms. Purvenas-Hayes. When Mr. Mongeluzzi told the *Legal Intelligencer* that Ms. Purvenas-Hayes did not wish to be vaccinated, it is reasonable to infer that he was disclosing that she wasn't vaccinated, rather than just her esoteric preference. And the fact of her vaccination or non-vaccination is health information, not just a personal political view.

**C.     Injury**

Ms. Purvenas-Hayes has pled an injury. To prevail on a cause of action for a violation of section 12112(d), she must demonstrate more than a bare violation of the statute. *See Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 519 (3d Cir. 2001). There must have been a tangible injury "through actual damage (emotional, pecuniary, or otherwise)." *Id*. The Complaint alleges that SMB's disclosure of her confidential medical information "caus[ed] Plaintiff tangible injury, including significant embarrassment, emotional distress, and pain and suffering." (ECF No. 1 ¶ 28.)

Taking those factual allegations as true, as I must, Ms. Purvenas-Hayes suffered an injury. SMB argues that Ms. Purvenas-Hayes's allegation is merely "conclusory," but the authority it cites for this proposition isn't on point. Those cases all evaluated factual

allegations against claims that required severe or extreme levels of emotional distress as an element of the claim. *See White v. Brommer*, 747 F. Supp. 2d 447, 465 (E.D. Pa. 2010) (requiring severe emotional distress); *Raciti v. Rushmore Loan Mgmt. Servs., LLC*, 412 F. Supp. 3d 462, 472 (D.N.J. 2019) (same); *Mankodi v. Trump Marina Assocs., LLC*, 525 Fed. App'x 161, 166 (3d Cir. 2013) (same); *Walden v. Patient-Centered Outcomes Rsch. Inst.*, 177 F. Supp. 3d 336, 345 (D.D.C. 2016) (requiring "extreme conduct"). SMB cites no authority, and I have found none, for the proposition that this claim requires that Ms. Purvenas-Hayes suffered such a level of distress. Ms. Purvenas-Hayes has alleged a tangible injury, and that's sufficient at this stage in the case.

### IV.  CONCLUSION

Congress has spoken, and it said in the ADA that employers have to keep confidential all medical information that they obtain when making inquiries about an employee's ability to perform a job. SMB made such an inquiry, got medical information from Ms. Purvenas-Hayes, and disclosed it. Ms. Purvenas-Hayes can pursue her lawsuit about that disclosure. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

December 15, 2023