IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DESIREE PURVENAS-HAYES, <br><br> Plaintiff, <br><br> v. <br><br> SALTZ MONGELUZZI BENDESKY P.C., <br><br> Defendant. | Case No.: 2:23-CV-02403-JDW |

**DEFENDANT SALTZ MONGELUZZI BENDESKY P.C.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1
II. FACTS ................................................................................................................................. 2
III. ARGUMENT ....................................................................................................................... 4
    A. Applicable Standards. ............................................................................................. 4
    B. Mr. Mongeluzzi Did Not Learn of Plaintiff's Vaccination Status or Preference as the Result of a Medical Inquiry. ...................................................... 5
    C. Plaintiff's Position On Vaccination Was Not Confidential .................................... 8
    D. Mr. Mongeluzzi Referenced Plaintiff's Stated Position On Vaccination, But He Did Not Discuss Or Even Know Her Actual Vaccination Status.............. 9
IV. CONCLUSION .................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bardell v. Banyan Delaware, LLC*,
    No. 23-cv-148, 2023 WL 6810092 (D. Del. Oct. 16, 2023)..................................................4, 5

*Cash v. Smith*,
    231 F.3d 1301 (11th Cir. 2000) ..................................................................................................5

*EEOC v. C.R. England, Inc.*,
    644 F.3d 1028 (10th Cir. 2011) ...............................................................................................4, 9

*EEOC v. Thrivent Fin. for Lutherans*,
    795 F. Supp. 2d 840 (E.D. Wis. 2011).................................................................................4, 5, 6

*McPherson v. O'Reilly Auto., Inc.*,
    491 F.3d 726 (8th Cir. 2007) ......................................................................................................8

*Perez v. Denver Fire Dep't*,
    243 F. Supp. 3d 1186 (D. Colo. 2017).......................................................................................8

*Sheriff v. State Farm Ins. Co.*,
    No. 12-cv-243, 2013 WL 4084081 (W.D. Pa. Aug. 13, 2013)..................................................5

*United States v. Springer*,
    625 F.3d 1305 (10th Cir. 2010) ..................................................................................................4

**Statutes**

42 U.S.C. § 12112(d) .......................................................................................................................4

42 U.S.C. § 12112(d)(4)(A)............................................................................................................4

Americans with Disabilities Act ("ADA") ............................................................................. *passim*

Fair Labor Standards Act ("FLSA").................................................................................................1

I.  **INTRODUCTION**

Plaintiff Desiree Purvenas-Hayes asserts a single claim under the Americans with Disabilities Act ("ADA") based on an alleged disclosure of her COVID-19 vaccination status by SMB shareholder Robert Mongeluzzi in June 2022. Mr. Mongeluzzi was responding to an inquiry from a reporter at the *Legal Intelligencer* about a Fair Labor Standards Act lawsuit that Plaintiff had filed. He noted that Plaintiff had resigned in July 2021, just days before a vaccination policy took effect. Mr. Mongeluzzi did not know whether Plaintiff was actually vaccinated, but the timing of the resignation, coupled with repeated statements by Plaintiff to co-workers about her opposition to the vaccine, led him to conclude that Plaintiff quit because she did not want to be vaccinated. He said as much to the reporter, stating that Plaintiff's unhappiness with the vaccination policy was the reason for both her resignation and the meritless FLSA claims. Plaintiff contends that this was an improper disclosure of confidential medical information.

Discovery has confirmed three critical shortcomings of Plaintiff's ADA claim. First, Mr. Mongeluzzi did not learn of Plaintiff's personal views of the COVID-19 vaccine as a result of a medical inquiry by SMB. On the contrary, Plaintiff volunteered her position to him and to many others in the office. In commenting to the reporter on why Plaintiff had left the firm, Mr. Mongeluzzi merely referenced a position that Plaintiff had communicated openly in discussions, emails and text messages with her co-workers and SMB attorneys. Second, Plaintiff's statements about her vaccination preference were not confidential, as they were shared by her in frequent discussions with her colleagues. And third, Mr. Mongeluzzi did not reveal Plaintiff's vaccination status, as he did not know it. He commented only on what Plaintiff had said repeatedly: that she was a vaccine skeptic who opposed the firm's vaccination policy. He did not disclose medical information, nor did he even have medical information about Plaintiff.

II.     **FACTS**

Plaintiff worked for SMB as a paralegal from January 2012 until her voluntary resignation in July 2021. *See* SOF ¶ 1. In March 2020, SMB closed its office in response to the COVID-19 pandemic. SMB employees, including Plaintiff, primarily worked remotely for over a year. *See id.* ¶ 2. During that time, Plaintiff informed numerous SMB employees and others, including SMB shareholder Robert Mongeluzzi, in conversation, by email, and by text message, that she did not plan to be vaccinated. *See id.* ¶¶ 3-8, 10-11, 14.

On May 26, 2021, SMB Managing Partner Larry Bendesky emailed all SMB employees to announce that SMB would reopen its office for employees fully vaccinated against COVID-19 on June 21, 2021 and that beginning on June 21, 2021, SMB would not allow any employee who was not fully vaccinated to work in the office. *See id.* ¶ 12. At the time, however, employees were still allowed to work remotely and there was no deadline to return to the office.

SMB's Office Manager, Elaine Butkus, was responsible for determining whether employees who were returning to the office were actually vaccinated and could present valid vaccination cards. *See id.* ¶ 13. Ms. Butkus was also responsible for collecting information from employees who did not wish to be vaccinated so a decision could be made as to whether the employees qualified for a religious or medical exemption. *See id.* Plaintiff had already told Ms. Butkus that she did not wish to be vaccinated before Mr. Bendesky's May 26, 2021 announcement, just as she had told numerous other SMB employees. However, SMB still had to determine whether Plaintiff's decision not to be vaccinated was a result of a sincerely held religious belief or a medical reason that would qualify for an exemption to the vaccination requirement. *See id.* ¶ 14. Accordingly, Ms. Butkus sent Plaintiff an email on June 15, 2021 stating, "You have told me you do not intend to become fully vaccinated. Please reply to this e-mail by 5:00 Wednesday June 16th with the reason why you do not intend to become fully vaccinated. Provide as much detail as you

2

deem appropriate." Plaintiff stated in her June 16, 2021 response, "First and foremost, I strongly believe that the decision whether or not to get vaccinated is a personal choice. And I do not have confidence that these vaccinations are safe." *See id.* ¶ 15. Mr. Mongeluzzi did not speak to or hear from Ms. Butkus about Plaintiff's vaccination status or position, and he was unaware of the emails between Plaintiff and Ms. Butkus on June 15 and 16, 2021. *See id.* ¶ 16.

On June 18, 2021, Mr. Mongeluzzi emailed all SMB employees to announce that employees would be required to return to work in the office, and that they would have to be vaccinated or granted an exemption from the vaccination requirement by August 2, 2021. *See id.* ¶ 17. On July 20, 2021, Plaintiff submitted a notice of resignation, effective as of July 29, 2021. She did not state why she was resigning, but the effective date of her resignation was just four days before the firm's vaccination policy was to take effect. *See id.* ¶ 18.

On June 9, 2022, Plaintiff filed a lawsuit against SMB contending that she was not paid for overtime that she claims to have worked from her home during the COVID-19 pandemic. *See id.* ¶ 19. On June 13, 2022, a reporter from the *Legal Intelligencer* contacted Mr. Mongeluzzi for a comment about Plaintiff's lawsuit. Mr. Mongeluzzi denied that Plaintiff was owed any overtime pay and shared his view that Plaintiff had resigned because of her widely shared opinions about vaccination and her refusal to comply with SMB's vaccination policy. The ensuing article in the *Legal Intelligencer* stated, in relevant part:

> According to Mongeluzzi, Purvenas-Hayes' July 2021 departure came just two weeks before the firm's deadline for employees to receive their firm-mandated COVID-19 vaccinations. He said she left because she did not wish to receive the shot and that she was one of two employees in the approximately 100-person firm not to comply.
>
> *See id.* ¶ 20.

3

III.   **ARGUMENT**

    A.   **Applicable Standards.**

The ADA prohibits an employer from inquiring about an employee's medical condition "unless such . . . inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). Medical information obtained from such an inquiry is subject to the ADA's confidentiality requirements. *See EEOC v. Thrivent Fin. for Lutherans*, 795 F. Supp. 2d 840, 843 (E.D. Wis. 2011). A disclosure of confidential medical information obtained from a medical inquiry may give rise to a violation of the ADA. *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1047-48 (10th Cir. 2011).

To prevail on her claim, Plaintiff must demonstrate that (1) SMB "obtained [her] medical information through an employment-related medical examination or inquiry," (2) SMB "disclosed that information," and (c) "that [she] suffered an injury as a result of the disclosure." *Bardell v. Banyan Delaware, LLC*, No. 23-cv-148, 2023 WL 6810092, at *5 (D. Del. Oct. 16, 2023). While the "[d]isclosure of confidential medical information obtained through an authorized medical examination or inquiry would constitute a violation of [42 U.S.C. § 12112(d)] and could give rise to a claim under the ADA," "[o]n its face, [42 U.S.C. § 12112(d)] does not apply to or protect information that is *voluntarily* disclosed by an employee unless it is elicited during an authorized employment-related medical examination or inquiry." *C.R. England, Inc.*, 644 F.3d at 1046-47 (citing *United States v. Springer*, 625 F.3d 1305, 1307 (10th Cir. 2010)) (emphasis in original). "In sum, if an employer discloses medical information that was voluntarily offered by an employee—outside of the context of an authorized employment-related medical examination or inquiry—then the employer is not subject to liability under [the ADA]." *Id.*

**B. Mr. Mongeluzzi Did Not Learn of Plaintiff's Vaccination Status or Preference as the Result of a Medical Inquiry.**

Courts have held that to prove a violation of the ADA's confidentiality requirement, the plaintiff must show that the medical information at issue was "obtained . . . through an employment-related medical examination or inquiry." *Bardell*, 2023 WL 6810092, at *5; *see also Sheriff v. State Farm Ins. Co.*, No. 12-cv-243, 2013 WL 4084081, at *8-9 (W.D. Pa. Aug. 13, 2013) (dismissing plaintiff's ADA claim because she did not allege that the defendant obtained information pursuant to a medical inquiry); *see also Thrivent Fin.*, 795 F. Supp. 2d at 843 ("[C]ourts have consistently held that the confidentiality requirements of [§ 12112(d)(4)] do not protect medical information that [was] not acquired as a result of a medical inquiry by the employer."); *Cash v. Smith*, 231 F.3d 1301, 1303 (11th Cir. 2000) (holding that the ADA's confidentiality requirements do not apply to medical information voluntarily disclosed by an employee to her supervisor even where the disclosure was made "in confidence").

The court's decision in *EEOC v. Thrivent Financial for Lutherans* is instructive. In that case, concerned supervisors reached out to an employee to ask "what's going on" when he did not report to work. *Thrivent Fin.*, 795 F. Supp. 2d at 842. The employee responded that he was suffering from a severe migraine headache and elaborated on his history of migraines. *See id.* The employee left his job and then became concerned that Thrivent Financial was providing negative references to prospective employers, so he hired a reference-checking agency. *See id.* The reference-checking agency called one of the supervisors to whom the employee had disclosed information relating to his migraines, and the supervisor disclosed information about the migraine condition to the agency. *See id.*

As the court observed, the ADA "focuses on the employer's active role in the disclosure and thus does not protect *any* disclosure of medical information to an employer no matter how it

5

arises; only those disclosures which the employer obtains through a 'medical examination' of the employee or an inquiry 'as to whether such employee is an individual with a disability or as to the nature or severity of the disability' are protected." *Id.* at 844.  The employer "had no reason to be concerned about [the employee's] physical ability to appear at work" and the email simply sought "an explanation for [his] un-excused absence from work on this particular day." *Id.* at 846. Accordingly, the court granted summary judgment for the employer despite its disclosure of medical information to the agency because the employer did not learn that information through a medical inquiry.

Here, Mr. Mongeluzzi did not learn of Plaintiff's position on vaccination through a medical inquiry, but rather through Plaintiff's repeated and voluntary disclosures of her personal views to him and to others at SMB.  *See* SOF ¶¶ 9, 11.  Plaintiff spoke openly about her opposition to the COVID-19 vaccine, and admits that she told at least eight SMB attorneys and employees that she had doubts about the safety of the vaccine and did not plan to be vaccinated.  *See id.* ¶ 3.  None of these communications were in response to a medical inquiry from the firm, and all preceded the firm's announcement that vaccination would be required as a condition of returning to the office.

Mr. Mongeluzzi heard from several sources, including Plaintiff.  In March or April of 2021, months before any return-to-work initiative had begun, Mr. Mongeluzzi and Plaintiff happened to be in the office on the same day.  As Mr. Mongeluzzi testified, it was a time when "the pandemic and vaccination was dominating everybody's conversations." Mr. Mongeluzzi "mentioned to [Plaintiff] that I had gotten vaccinated." *See* SOF ¶ 11.  In response, Plaintiff "indicated that she thought [the vaccine] was too new and untested and she didn't believe in the vaccine." *See id.* This was a conversation, not a medical inquiry.

6

Mr. Mongeluzzi also heard from his assistant, Ms. Smith, that Plaintiff was a vaccine skeptic. Plaintiff and Ms. Smith were in the office at the same time on two separate occasions, and Plaintiff remarked to Ms. Smith that she did not plan to be vaccinated. *See id.* ¶ 10. Ms. Mongeluzzi also talked to another SMB attorney, Adam Pantano, who supervised Plaintiff. Plaintiff had volunteered to Mr. Pantano as well that she did not plan to be vaccinated. *See id.* ¶¶ 3, 9.

There is simply no evidence suggesting that Mr. Mongeluzzi learned of Plaintiff's position as a result of a medical inquiry by the firm. Indeed, discovery has revealed that there was no medical inquiry about Plaintiff's vaccination status. Plaintiff has suggested that she disclosed her vaccination status or position in response to an inquiry by SMB's Office Manager, Elaine Butkus. But a June 15-16, 2021 email trail between them and Ms. Butkus's testimony reveal otherwise. Ms. Butkus did not ask <u>whether</u> Plaintiff was vaccinated, because she already knew where Plaintiff stood as a result of Plaintiff's repeated disclosures to her colleagues. What Ms. Butkus asked in her email was <u>why</u> Plaintiff had chosen not to be vaccinated. *See* SOF ¶ 15 ("You have told me you do not intend to become fully vaccinated. Please reply to this e-mail by 5:00 Wednesday June 16th with the reason why you do not intend to become vaccinated."). Ms. Butkus needed that information so that the firm could determine whether Plaintiff was entitled to an exemption from the policy for religious or medical reasons. *See id.* ¶ 14. In response, Plaintiff did not disclose whether she was actually vaccinated, but stated simply that she believed that vaccination was a personal decision. *See id.* ¶ 15 ("First and foremost, I strongly believe that the decision whether or not to get vaccinated is a personal choice. And I do not have confidence that these vaccinations are safe.").

7

Critically, Ms. Butkus did not share that information with Mr. Mongeluzzi. The two of them did not discuss Plaintiff's position, nor was the email chain with Mr. Butkus forwarded to Mr. Mongeluzzi. Both Ms. Butkus and Mr. Mongeluzzi have testified that they did not talk to each other in the spring or summer of 2021 about Plaintiff's vaccination status or views.

In short, Mr. Mongeluzzi did not learn of Plaintiff's position as a result of a medical inquiry. And in fact, there was no medical inquiry about Plaintiff's vaccination status. Plaintiff simply cannot establish, therefore, that there was an inappropriate disclosure of confidential medical information in violation of the ADA.

C. **Plaintiff's Position On Vaccination Was Not Confidential**

Plaintiff must show "that the disclosed information was confidential" to succeed on her ADA claim. *McPherson v. O'Reilly Auto., Inc.*, 491 F.3d 726, 732 (8th Cir. 2007); *see also Perez v. Denver Fire Dep't*, 243 F. Supp. 3d 1186, 1197 (D. Colo. 2017). But the information that Mr. Mongeluzzi allegedly shared with the *Legal Intelligencer* was widely known as a result of voluntary disclosures by Plaintiff. The undisputed facts, gleaned mostly from Plaintiff's deposition testimony, confirm that Plaintiff spoke to the following SMB employees about her decision not to be vaccinated and her position on the vaccine generally:

- Adam Pantano, SMB Shareholder (*see* SOF ¶ 3);
- Tina Salcone, SMB Legal Assistant (*see id.*);
- Lisa Dean, SMB Executive Assistant and Paralegal (*see id.*);
- Dina Bilinski, SMB Legal Secretary (*see id.*);
- Virginia Smith, SMB Executive Assistant (*see id.*);
- Ann Johnson, SMB Paralegal (*see id.*);
- Elaine Butkus, SMB Office Manager (*see id.*); and

8

- Mike Sterling, SMB Director of Litigation Support (*see id.*)

She said essentially the same thing in text messages and emails sent on her SMB account to vendors and service providers:

- Shana Feight, legal recruiter (*see id.* ¶ 4);

- Donna Lucas, an employee of an SMB vendor (*see id.* ¶ 5); and

As described by Mr. Mongeluzzi and Ms. Smith, Plaintiff's views on the vaccine were well known among her SMB colleagues, and not because of any medical inquiries. *See id.* ¶¶ 10-11. Against that backdrop, Plaintiff's contention that her vaccination status was confidential does not hold water. Every court to have considered the issue has held that "if an employer discloses medical information that was voluntarily offered by an employee—outside of the context of an authorized employment-related medical examination or inquiry—then the employer is not subject to liability under § 102(d)." *C.R. England, Inc.*, 644 F.3d at 1047.

### D.  Mr. Mongeluzzi Referenced Plaintiff's Stated Position On Vaccination, But He Did Not Discuss Or Even Know Her Actual Vaccination Status

Plaintiff's claim fails for a third reason: Mr. Mongeluzzi did not disclose Plaintiff's vaccination status to the *Legal Intelligencer*. Mr. Mongeluzzi told the reporter that he "suspected that [Plaintiff] left because she didn't want to receive the shot." *See* SOF ¶ 20. He did not say whether Plaintiff was vaccinated, nor did he know; he had a suspicion, but no definitive knowledge. Plaintiff had told others about her position months earlier, but Mr. Mongeluzzi had no way of knowing whether Plaintiff was still unvaccinated at the time she resigned or whether she had been vaccinated all along notwithstanding her comments to others in the workplace. Mr. Mongeluzzi simply did not have confidential medical information, let alone reveal that information to a reporter.

IV. **CONCLUSION**

Plaintiff's position on vaccination was not confidential. It was well known as a result of voluntary disclosures by Plaintiff in emails, text messages and conversations that were not connected to a medical inquiry by the firm. Mr. Mongeluzzi learned of Plaintiff's personal views about the vaccine from information that Plaintiff discussed freely and openly with him and with others at SMB. Neither he nor anyone else at the firm disclosed confidential information learned from a medical inquiry, nor did he even know whether Plaintiff was vaccinated at the time she resigned. Accordingly, summary judgment for SMB is warranted on Plaintiff's ADA claim.

Dated: June 21, 2024

*/s/ Michael L. Banks*
Michael L. Banks (PA ID 35052)
Shane C. O'Halloran (PA ID 324553)
2222 Market Street
Philadelphia, PA  19103
Tel: 215.963.5000
Fax: 215.963.5001
Email: michael.banks@morganlewis.com
          shane.ohalloran@morganlewis.com

*Counsel for Defendant Saltz Mongeluzzi Bendesky P.C.*

-1-

**CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2024, a copy of the foregoing was served via ECF upon the following:

Wayne Ely
225 Lincoln Highway
Building A, Suite 150
Fairless Hills, PA  19030
wayne3236@gmail.com
*Attorney for Plaintiff Desiree Purvenas-Hayes*

*/s/ Michael L. Banks*
Michael L. Banks