UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIREE PURVENAS-HAYES

          *Plaintiff,*

v.

SALTZ, MONGELUZZI 7 BENDESKY, P.C.

          *Defendant.*

CIVIL ACTION

NO.  2:23-cv-02403-JDW

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    **I.**    **Introduction**

Defendant's Motion for Summary Judgment is currently before the Court for disposition. Because genuine issues of material fact remain to be determined as to Plaintiff's Americans With Disabilities Act claim, Defendant's motion for summary judgment must be denied.

    **II.**    **Legal Standard**

Defendant cannot prevail given the high bar it must satisfy to win summary judgment on Plaintiff's ADA disclosure claim.

    **a.**    **The summary judgment standard.**

Pursuant to Federal Rule of Civil Procedure 56, the entry of summary judgment is appropriate only in those cases " . . . where there is no genuine issue of material fact for the jury to decide." *See Coolspring Stone Supply v. American States Life Ins. Co.,* 10 F.3d 144, 148 (3rd Cir. 1993). Thus, summary judgment may be granted only when there is *no dispute* as to any issue of material fact and where the moving party is entitled to judgment as a matter of law. *Id.*

In response to a motion for summary judgment, the non-movant (herein, the Plaintiff) must demonstrate the existence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S. Ct. 2505 (1986).  The burden always remains on the moving party,

however, to show that a rational trier of fact could not find for the non-moving party and that there is thus no genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S. Ct. 1348 (1986). Defendants cannot meet the foregoing burden in the instant case.

In deciding a motion for summary judgment, the Court must accept and believe the evidence of the non-moving party (here, the Plaintiff) as true, and must not weigh or consider the credibility of witnesses. *Anderson, supra,* 477 U.S. at 248-52. Any and all doubts must be resolved in Plaintiff's favor. *Eastman Kodak Co. v. Image Technological Services, Inc.,* 504 U.S. 451, 456, 112 S. Ct. 2072, 2076 (1992). Where the non-moving party's evidence contradicts the movant's evidence, then the non-movant's evidence must be accepted and taken as true. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3rd Cir. 1992), *cert. denied,* 507 U.S. 912, 113 S. Ct. 1262 (1993).

Courts have noted that "[i]n employment discrimination cases, the summary judgment standard is 'applied with added rigor' because 'intent and credibility are crucial issues.'" *Walden v. St. Gobain Corp.,* 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) *quoting Stewart v. Rutgers, State Univ.,* 120 F.3d 426, 431 (3d Cir. 1997).

The Third Circuit Court of Appeals has noted that Title VII, as a remedial statute, should be interpreted broadly. This should of course also hold true for the ADA, which is also a remedial statute. In *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535 (3d Cir. 2006), the Court noted that:

> Two principles guide our analysis. First, Title VII is a remedial statute, so it must be interpreted broadly . . . . Second, there is a low bar for establishing a *prima facie* case of employment discrimination.
>
> *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538-39 (3d Cir. 2006).

In most discrimination cases, the plaintiff has no "direct" evidence discrimination occurred (*i.e.:* admissions discrimination caused the firing, racially-charged statements, etc.). As the Third Circuit has noted:

> In today's climate of public opinion, blatant acts of discrimination -- the true "smoking guns" -- can easily be identified, quickly condemned and often rectified in the particular settings where they occur. *Much of the discrimination that remains resists legal attack exactly because it is so difficult to prove. . . . .* That is one of the reasons why our legal system permits discrimination plaintiffs to [] prove [their] case[s] by direct *or circumstantial* evidence.
>
> *Jackson v. University of Pittsburgh,* 826 F.2d 230, 235 (3d Cir. 1987), *cert. denied,* 484 U.S. 1020, 98 L. Ed. 2d 680, 108 S. Ct. 732 (1988)(emphasis added, internal quotations and citations omitted).

As will be demonstrated below, Plaintiff has adduced ample evidence to merit denial of Defendant's summary judgment motion.

**b. The applicable standard under the ADA.**

As this Court correctly held in its December 15, 2023 Opinion denying Defendant's Motion to Dismiss (ECF 18), the Americans with Disabilities Act provides that covered employers "may make inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B). However, when an employer receives information pursuant to Section 12112(d)(4)(B), it must treat the information as a confidential medical record and can only disclose it " . . . to supervisors who need to know about job-related restrictions, first aid and safety personnel, and government investigators evaluating ADA compliance." *See* ECF 18, p. 3 of 10[1] (citing §§ 12112(d)(3)(B) and (d)(4)(C). To prevail on her claims, Plaintiff must show that: (a) Defendant obtained her medical information through an employment-related medical examination or inquiry; (b) Defendant disclosed that information; and (c) that she suffered an injury as a result of the disclosure. ECF 18, p. 4 of 10. (*citing Bardell v. Banyan Delaware, LLC,* No. CV 23-148-WCB, 2023 WL 6810092, at *5 (D. Del. Oct. 16, 2023).

---

[1] When referring to specific pages of ECF filings, Plaintiff utilizes the ECF pagination, which differs from the original pagination.

Plaintiff can establish each of the foregoing elements,[2] and Defendant's motion for summary judgment must be denied as a result.

### III. Argument

Defendant's motion for summary judgment is without merit and should be denied.

#### a. Defendant learned of Plaintiff's vaccination status as the result of a medical inquiry.

Courts have held that to prove a violation of the ADA's confidentiality requirement, the plaintiff must show that the medical information at issue was "obtained . . . through an employment-related medical examination or inquiry." *Bardell v. Banyan Delaware, LLC,* No. CV 23-148-WCB, 2023 WL 6810092, at *5 (D. Del. Oct. 16, 2023). It is undisputed that Defendant made such an inquiry of Plaintiff and that Plaintiff provided information in response to that inquiry.

Per the parties' Stipulated Facts (ECF 38), it is established that on May 26, 2021, Defendant's Managing Partner emailed all of Defendant's employees to announce that it would reopen its office for employees fully vaccinated against COVID-19 on June 21, 2021. He advised that beginning on June 21, 2021, SMB would not permit any employee who was not fully vaccinated to work in the office. ECF 38, ¶ 12. Defendant's Office Manager, Elaine Butkus, was responsible for determining whether employees who were returning to the office were actually vaccinated and could present valid vaccination cards. If an employee did not wish to be vaccinated, Ms. Butkus was responsible for collecting information from that person. ECF 38, ¶ 13.

##### i.    *Elaine Butkus made a medical inquiry of Plaintiff.*

On June 15, 2021, Ms. Butkus sent an email to Plaintiff stating, "[y]ou have told me you do not intend to become fully vaccinated. Please reply to this e-mail by 5:00 Wednesday June 16th with the reason why you do not intend to become vaccinated. Provide as much detail as you deem

---

[2] Defendant does not dispute the "damages" element of Plaintiff's claim in its summary judgment motion.

-1-

appropriate." Plaintiff stated in her June 16, 2021 response, "[f]irst and foremost, I strongly believe that the decision whether or not to get vaccinated is a personal choice. And I do not have confidence that these vaccinations are safe." ECF 38, ¶ 15.

### ii. *Adam Pantano made a medical inquiry of Plaintiff.*

Defendant also admits that Adam Pantano, Plaintiff's supervisor, advised Mr. Mongeluzzi of Plaintiff's vaccine status. ECF 38, Ex. C, Mongeluzzi Tr. at 15:19-20 ("Adam Pantano told me."). Mr. Pantano *also* inquired as to Plaintiff's vaccine status during the period of time when Defendant was collecting information related to its employees' vaccine status and requiring them to be vaccinated or to leave their employment. ECF 38, Ex. B, Purvenas-Hayes Tr. At 11:21-24 (Mr. Pantano " . . . made an inquiry into whether I would be vaccinated before the deadline.").[3] ECF 18, Ex. B, Purvenas-Hayes Tr. at 11:21-24 and 29:22. Plaintiff advised Mr. Pantano that she was not receiving the vaccination. ECF 18, Ex. B, Purvenas-Hayes Tr. at 13:9 ("I told him I wasn't doing it."). Plaintiff had not discussed her vaccine status with Mr. Pantano before. Ex. B, Purvenas-Hayes Tr. at 13:19-20. She testified that she expected Mr. Pantano's inquiry would be confidential. ECF 18, Ex. B, Purvenas-Hayes Tr. at 30:2-22.

### b. **Plaintiff's vaccination status was "confidential" for ADA purposes.**

Defendant makes much of Plaintiff's disclosure of her vaccine status to certain work acquaintances, but there is no support in the case law for its position that such disclosure removes the "confidential" status of medical information where it is undisputably obtained during a medical inquiry and then disclosed to a daily newspaper with over 14,000 readers.

Defendant cites two authorities that it claims support the proposition that the medical

---

[3] Pantano's use of the words "before the deadline" are significant. His choice of those words confirms he inquired of Plaintiff's vaccine status during the period of time when Defendant was collecting information about its employees' vaccine status (*i.e.:* engaging in a medical inquiry of Plaintiff and other employees).

-1-

information at issue in the instant case was not allegedly not "confidential." *See* Defendant's Memorandum of Law, ECF at p. 11 of 15[4] (citing *McPherson v. O'Reilly Auto., Inc.*, 491 F.3d 726, 732 (8th Cir. 2007) and *Perez v. Denver Fire Dep't*, 243 F. Supp. 3d 1186, 1197 (D. Colo. 2017). Neither case supports its position.

As the *Perez* court noted, "[e]mployers may ask employees about their medical information for certain job related purposes, but once that information is obtained, they must keep it confidential. Stated differently, *a covered entity must treat "as a confidential medical record" any information obtained through a voluntary medical examination or* inquiry under § 12112(d)(4)." *Perez v. Denver Fire Dep't*, 243 F. Supp. 3d 1186, 1196-1197 (D. Colo. 2017)(emphasis added, quotation and citation omitted). The *Perez* court explained that "confidential" information is *any information* obtained via a medical inquiry. It stated that information is "confidential" under the pertinent provisions of the ADA provided it is " . . . derived from an employment-related medical examination or inquiry." *Perez, supra,* 243 F. Supp. 3d at 1197 (D. Colo. 2017). Here, it is undisputed that both Elaine Butkus and Adam Pantano made such inquiries to Plaintiff and that she provided information in response to those inquiries.

Defendant has cited no case authority supporting its argument that an employee advising a small number of work acquaintances of one's medical information permits an employer to disclose that information to a newspaper circulated daily to 14,000 readers in the Philadelphia legal community after it learned that information during a medical inquiry. Plaintiff has testified that the disclosure negatively affected her and caused her pain and suffering. *See* ECF 38, ¶ 3 and its attached Ex. B (excerpts from the Transcript of the Deposition of Plaintiff) at pp. 122-23 and 133-35.

---

[4] The page numbers referenced by Plaintiff follow the ECF pagination of Defendant's Memorandum, which differs from its original internal pagination.

### c. **Genuine issues of material fact remain to be decided as to how Mr. Mongeluzzi learned of Plaintiff's vaccination status.**

Defendant's argument that there is no evidence Mr. Mongeluzzi learned Plaintiff's vaccine status from Elaine Butkus after her medical inquiry to Plaintiff must fail for three reasons.

First, Mr. Mongeluzzi recalls only *one conversation* in which he claims he learned of Plaintiff's vaccination status directly from her. This was a conversation in his office during which he alleges he showed Plaintiff and another employee his new stereo system and also allegedly discussed vaccination. ECF 38, Ex. C, Mongeluzzi Tr. at 23:2-24 and 24, *see also* 32:14-23. However, Plaintiff has testified that she did *not* discuss her vaccine status with Mr. Mongeluzzi during that conversation. ECF 38, Ex. B, Purvenas-Hayes Tr. at 118:10-17. Of course, where (as is the case here) the non-moving party's evidence contradicts the movant's evidence, then the non-movant's evidence must be accepted and taken as true. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3rd Cir. 1992), *cert. denied,* 507 U.S. 912, 113 S. Ct. 1262 (1993).

Defendant admits that Adam Pantano, Plaintiff's supervisor, advised Mr. Mongeluzzi of Plaintiff's vaccine status. ECF 38, Ex. C, Mongeluzzi Tr. At 15:19-20 ("Adam Pantano told me."). Mr. Pantano inquired as to Plaintiff's vaccine status during the period of time when Defendant was collecting information related to its employees' vaccine status and requiring them to be vaccinated or to leave their employment. *See supra* p. 10, section (a)(ii). There is therefore sufficient evidence that Mr. Mongeluzzi learned of Plaintiff's vaccination status from Mr. Pantano after he learned it after a medical inquiry to Plaintiff.

Second, Defendant's February 1, 2024 Rule 26 Disclosures (which it incorporated into its February 20, 2024 answers to Plaintiff's Interrogatories) stated that Elaine Butkus ". . . has knowledge of " . . . communications with the *Legal Intelligencer* regarding Plaintiff." ECF 38, Ex. P, Defendant's Rule 26 Disclosures and Ex. Q, Defendant's Answers to Interrogatories (*see* Interrogatory Answers 1 and 2). While Ms. Butkus denied she had any such knowledge, Defendant

has stated that *she in fact did,* and has not explained this inconsistency. This admission allows the Court to draw a reasonable inference that Ms. Butkus was involved in the disclosure to the *Legal Intelligencer* or provided information regarding Plaintiff's vaccine status that was utilized in that disclosure.

Third, Plaintiff need not prove that Elaine Butkus disclosed Plaintiff's information directly to Mr. Mongeluzzi to prevail on her claim. Both Mr. Mongeluzzi and Ms. Butkus are agents and employees of Defendant, and it is Defendant (not Mr. Mongeluzzi or Ms. Butkus) that is liable under the ADA for the disclosure at issue here. As stated *supra* at section II(b), Plaintiff need only prove: (a) that Defendant obtained her medical information through an employment-related medical examination or inquiry; (b) that Defendant disclosed that information; and (c) that she suffered an injury as a result of the disclosure. ECF 18, p. 4 of 10. (*citing Bardell v. Banyan Delaware, LLC,* No. CV 23-148-WCB, 2023 WL 6810092, at *5 (D. Del. Oct. 16, 2023). Plaintiff has established the first two elements - and Defendant does not challenge the third element in its motion. Nothing in the ADA requires a plaintiff to prove more to prevail on a medical disclosure claim.

When an employer receives information pursuant to Section 12112(d)(4)(B), it must treat the information as a confidential medical record and can only disclose it " . . . to supervisors who need to know about job-related restrictions, first aid and safety personnel, and government investigators evaluating ADA compliance." *See* ECF 18, p. 3 of 10[5] (citing §§ 12112(d)(3)(B) and (d)(4)(C). It is undisputed here that Defendant received Plaintiff's medical information during a medical inquiry and failed to treat it as confidential. Nothing Defendant raises in its motion changes that fact.

---

[5] When referring to specific pages of ECF filings, Plaintiff utilizes the ECF pagination, which differs from the original pagination.

-1-

    d. **Mr. Mongeluzzi disclosed Plaintiff's vaccination status *as fact*, and Defendant's argument that he disclosed only his "suspicions" must fail.**

Defendant's claim that Mr. Mongeluzzi did not disclose Plaintiff's vaccination status to the *Legal Intelligencer* and that he only "suspected" that her vaccination her status led to her resignation must also fail. Paragraph 20 of the parties' Stipulated Facts makes this clear. The *Legal Intelligencer* reported that Mr. Mongeluzzi disclosed information related to Plaintiff's vaccine status as *fact,* not suspicion or supposition:

> According to Mongeluzzi, Purvenas-Hayes' July 2021 departure came just two weeks before the firm's deadline for employees to receive their firm mandated COVID-19 vaccinations. He said she left *because she did not wish to receive the shot and that she was one of two employees in the approximately 100-person firm not to comply.*

*See* ECF 38, ¶ 20 and its attached Ex. O, *Legal Intelligencer* Article (emphasis added).

**IV.**     **Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment should be denied.

                                                                Respectfully submitted,

                                                                 S/ Wayne A. Ely
                                                                 Wayne A. Ely, Esquire
                                                                 Counsel for Plaintiff
                                                                 59 Andrea Drive
                                                                 Richboro, PA 18954
                                                                 (215) 801-7979

July 26, 2024