IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DESIREE PURVENAS-HAYES**, *Plaintiff*, v. **SALTZ, MONGELUZZI & BENDESKY P.C.**, *Defendant*. | Case No. 2:23-cv-02403-JDW |

### MEMORANDUM

Once information is public, it remains public. The Americans With Disabilities Act protects employees from employer disclosure of their confidential medical information. But it doesn't protect information that an employee shares with co-workers, including superiors, outside of an employer-conducted inquiry. Once she decides to make the information public, she cannot turn around and sue her employer for disclosing that information. Yet that's what Desiree Purvenas-Hayes seeks to do. She shared her opposition to the COVID-19 vaccine with other employees at Saltz, Mongeluzzi & Bendesky P.C. ("SMB") and did so—at least once—outside the confines of any SMB-initiated medical inquiry. That public information made its way through the halls at SMB until Robert Mongeluzzi disclosed it to the press. Because his statement did not disclose private information, it didn't violate the ADA, and I will grant SMB summary judgment.

## I.   BACKGROUND

### A.   Facts

#### 1.   SMB's COVID-19 policy

Ms. Purvenas-Hayes worked at SMB as a paralegal from January 2012 until her voluntary resignation in July 2021. In March 2020, SMB closed its office due to the COVID-19 pandemic. SMB employees, including Ms. Purvenas-Hayes, worked remotely during the closure. On May 26, 2021, SMB Managing Partner Larry Bendesky sent an email announcing that SMB would reopen its office for fully vaccinated employees on June 21, 2021. He advised that beginning June 21, 2021, SMB would not allow any employee who was not fully vaccinated to work in the office.

SMB's office manager, Elaine Butkus, was tasked with "determining whether employees who were returning to the office were actually vaccinated and could present valid vaccination cards." (ECF No. 38 ¶ 13.) If an employee did not want to be vaccinated, "Ms. Butkus was responsible for collecting information from that person as to the reason so a decision could be made as to whether the employee qualified for a religious or medical exemption." (*Id.*)

On June 18, 2021, SMB Partner Robert Mongeluzzi emailed SMB employees to announce that the firm would require them to return to work in the office and require them to be vaccinated or to obtain an exemption from the vaccination requirement by August 2, 2021.

### 2. Ms. Purvenas-Hayes's statements about the vaccine

Between March 2020 and June 2021, Ms. Purvenas-Hayes told several SMB employees and attorneys that she was not vaccinated against COVID-19 and did not wish to receive the vaccine, including her supervisor Adam Pantano, Mr. Mongeluzzi's assistant Virginia Smith, and Ms. Butkus.

Ms. Purvenas-Hayes had at least two conversations with Mr. Pantano regarding the vaccine. One conversation took place before SMB's announcement of its vaccination requirement. During that conversation, Ms. Purvenas-Hayes informed Mr. Pantano that she would not be getting vaccinated. She confirmed that the conversation took place in a text message dated May 18, 2021—eight days before SMB announced its vaccination policy—to Dina Bilinski, a former SMB employee, stating that she "already told Adam [Pantano] [she's] not getting vaccinated." (ECF No. 38-6 at 2.) The other conversation took place after the announcement. And sometime in the spring of 2021, before SMB employees returned to the office, Ms. Purvenas-Hayes twice expressed to Ms. Smith that she was not vaccinated and would not become vaccinated. Both Ms. Smith and Mr. Pantano relayed Ms. Purvenas-Hayes's position on the vaccine to Mr. Mongeluzzi.[1]

---

[1] Mr. Mongeluzzi maintains that Ms. Purvenas-Hayes also told him directly that she did not wish to receive the COVID-19 vaccine. Because Ms. Purvenas-Hayes denies this and the record does not corroborate either narrative, I treat this as a disputed fact and resolve it in Ms. Purvenas-Hayes's favor.

Finally, Elaine Butkus, who was tasked with determining whether employees qualified for an exemption from SMB's vaccination requirement, sent an email to Ms. Purvenas-Hayes on June 15, 2021, stating, "You have told me you do not intend to become fully vaccinated. Please reply to this e-mail by 5:00 Wednesday June 16th with the reason why you do not intend to become vaccinated. Provide as much detail as you deem appropriate." (ECF No. 38 ¶ 15.) The next day, Ms. Purvenas-Hayes responded: "First and foremost, I strongly believe that the decision whether or not to get vaccinated is a personal choice. And I do not have confidence that these vaccinations are safe." (*Id.*)

### 3. Mr. Mongeluzzi's statement to *The Legal Intelligencer*

On June 9, 2022—roughly a year after her voluntary resignation—Ms. Purvenas-Hayes sued SMB, alleging that she wasn't paid for overtime worked from home during the COVID-19 pandemic. A few days later, a reporter from *The Legal Intelligencer* contacted Mr. Mongeluzzi for a comment about her lawsuit. Mr. Mongeluzzi denied that Ms. Purvenas-Hayes was owed overtime pay. His comments to the reporter led to an article that reported that Mr. Mongeluzzi said that Ms. Purvenas-Hayes "left [SMB] because she did not wish to receive the shot and that she was one of two employees in the approximately 100-person firm not to comply." (*Id.* ¶ 20.)

### B. Procedural History

On June 22, 2023, Ms. Purvenas-Hayes filed a second suit against SMB, this time alleging violations of the ADA's confidentiality requirements. Ms. Purvenas-Hayes alleges

4

that SMB solicited her confidential medical information, willfully disclosed it, and caused her tangible injury. SMB filed a motion to dismiss, which I denied. On June 21, 2024, SMB filed a motion for summary judgment. Ms. Purvenas-Hayes responded. The Motion is ripe.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007). "[D]isputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."

*Clark v. Modern Group Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (quoting *Celotex Corp.*, 477 US. at 322).

## III.   DISCUSSION

Section 12112(d) of the ADA prohibits an employer from inquiring about an employee's medical condition "unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). Information obtained from such inquiry "is treated as a confidential medical record." *Id.* § 12112(d)(3)(B). To state a claim for violation of the ADA's confidentiality provisions,[2] Ms. Purvenas-Hayes must allege that "[her] employer obtained [her] medical information through employment-related medical examinations and inquiries, the information obtained through such means was disclosed by the employer rather than treated as confidential ... and [she] suffered a tangible injury as a result of the disclosure." *Shoun v. Best Formed Plastics, Inc.*, 28 F. Supp. 3d 786, 788–89 (N.D. Ind. 2014).

Ms. Purvenas-Hayes's claim fails because the ADA's confidentiality requirement protects information that an employer acquires through inquiry or examination, not

---

[2] Ms. Purvenas-Hayes also alleges in her Complaint that SMB failed to keep confidential medical information "on separate forms or in separate medical files as specifically required by the [ADA]." (ECF No. 1 ¶ 35.) Neither party addressed this claim in their summary judgment submissions. Because Ms. Purvenas-Hayes did not raise it as a reason to preserve the case, I consider it abandoned. Even if this claim is not abandoned, SMB would be entitled to summary judgment because Ms. Purvenas-Hayes cannot maintain her suit against SMB solely on the ground of improper recordkeeping. *See Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 520 (3d Cir. 2001).

information that is "voluntarily offered." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1047 (10th Cir. 2011). Here, the facts show that Ms. Purvenas-Hayes shared her vaccine status outside of any SMB process. She informed Mr. Pantano that she would not be getting vaccinated a week before SMB announced its COVID-19 vaccination requirement—and therefore before SMB initiated any medical inquiry or examination. Mr. Pantano then conveyed this information to Mr. Mongeluzzi, who made the disclosure at issue. Disclosure of this "voluntarily offered" information does not subject SMB to ADA liability. *E.E.O.C.*, 644 F.3d at 1047.

Ms. Purvenas-Hayes contends that she never discussed her vaccine status with Mr. Pantano before SMB's vaccine policy announcement, so Mr. Mongeluzzi must have been conveying ADA-protected information. But her testimony is equivocal, at best. She says that "[t]o the best of [her] recollection," SMB's policy had already been announced when she disclosed her vaccination status to Mr. Pantano. (ECF No. 38-2, at 12.) However, she then states that she "[doesn't] know if [the conversation] occurred before the deadline" announcement and that she "[doesn't] believe" that concedes that she "[doesn't] know" if she had other conversations with Mr. Pantano before the announcement. (*Id.* at 13.)

While Ms. Purvenas-Hayes isn't sure when she had that conversation, the record sheds demonstrates that it happened before SMB announced its vaccine policy. Her text to a coworker dated May 18, 2021, reports that she "already told Adam [Pantano] [she's] not getting vaccinated." (ECF No. 38-6, at 2.) Ms. Purvenas-Hayes doesn't deny or dispute

7

that text; she just argues that it doesn't matter because there's a difference between telling a small number of people and telling a wide audience about her vaccination status. Thus, though the Parties in theory disagree about the timing of Ms. Purvenas-Hayes's conversation with Mr. Pantano, there is no genuine dispute that would allow a "rational person" to accept Ms. Purvenas-Hayes's version of events and conclude that Ms. Purvenas-Hayes had her conversation with Mr. Pantano after SMB announced its vaccination policy. *Clark*, 9 F.3d at 326. In short, Ms. Purvenas-Hayes's "bare and self-serving" testimony does not create a genuine dispute of material fact in the face of "evidence … [that] both undermines and outweighs" her version of events. *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 264 (3d Cir. 2012). Because Ms. Purvenas-Hayes communicated her opposition to the vaccine outside of a medical inquiry, to an individual who then passed this information on to Mr. Mongeluzzi, I need not assess whether her other vaccine-related conversations constitute employment-related medical inquiries. Even if they do, it cannot be the case that the ADA's confidentiality provisions protect volunteered information just because it was also obtained through a medical inquiry or examination. *See Koch v. White*, 35 F. Supp.3d 37, 40–41 (D.D.C. 2014) (no improper disclosure where the employee already voluntarily disclosed the information in the confidential records). This accords with the general principle that publicly available information is not confidential. *See, e.g., Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 207 (3d Cir. 1991); *see also Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999) (the right

to confidentiality protects "previously undisclosed" medical information). Ms. Purvenas-Hayes's voluntary disclosure thus forecloses her ADA claim and entitles SMB to summary judgment.

## IV.   CONCLUSION

Ms. Purvenas-Hayes shared her vaccine status with SMB outside the confines of a medical inquiry, so she cannot establish her claim under the ADA. Because I am granting summary judgment on this ground, I need not consider SMB's other arguments. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

November 4, 2024